GERTRUDE V. CLAFFY, Appellee, vs. THE CHICAGO DOCK
AND CANAL COMPANY, Appellant.

*Opinion filed February 25, 1911—Rehearing. denied April 5, 1911.*

1. CONSTITUTIONAL LAW—*legislature may form classes for the
purpose of police regulation.* The legislature has power to form
classes for the purpose of police regulation, provided it does not
discriminate between persons in the same situation.

2. SAME—*act of 1907, to protect persons in construction and
repair of buildings, is a police measure.* The act of 1907, which
provides for the protection and safety of persons in and about the
construction, repairing, alteration or removal of buildings, bridges,
viaducts and other structures, (Laws of 1907, p. 312,) is an exer-
cise of the police power by the legislature.

3. SAME—*courts should sustain constitutionality of statutes un-
less they are clearly invalid.* In determining the constitutionality
of statutes it is the duty of courts to sustain them, except in cases
of clear necessity and where they are in plain and obvious conflict
with the constitution.

4. SAME—*it is not to be assumed that the legislature intended
to exceed its constitutional authority.* While it is the duty of
courts to hold an act invalid which is clearly in violation of the
constitution, yet it is not to be assumed, in construing a statute,
that the legislature intended to exceed its constitutional authority.

5. SAME—*section 7 of act of 1907, relating to protection of per-
sons in buildings being built or repaired, is not invalid.* Section 7
of the act of 1907 (Laws of 1907, p. 314,) is not invalid upon the
alleged ground that it applies where hoisting apparatus is used in
the construction of buildings but not where it is used in repairing
buildings, and imposes a liability upon contractors and owners in
case of buildings being constructed which is not imposed upon
them where buildings are being repaired, as said section will not
admit of such an interpretation but must be held to apply both to
buildings being constructed and to those being repaired, in which
hoisting apparatus for material is used.

6. NEGLIGENCE—*section 7 of act of 1907, for protection of per-
sons in buildings being constructed or repaired, construed.* In view
of the entire act of 1907, (Laws of 1907, p. 312,) the provision of
section 7 requiring that openings through which materials are con-
veyed by hoisting apparatus or elevating machines shall be fenced
by substantial barriers, applies not only to buildings being con-
structed but also to buildings being repaired, although it mentions
only buildings in course of construction.

7. SAME—*the act of 1907 applies alike to buildings being constructed and those being repaired or altered.* The purpose of the act of 1907 (Laws of 1907, p. 312,) is to provide the same protection for workmen against injuries while engaged in repairing, altering or removing a building as in constructing one, notwithstanding sections 2, 3, 6 and 7 make no specific mention of buildings being repaired, altered or removed.

8. SAME—*when owner of building is liable, under section 7 of act of 1907, for failure to comply with its provisions.* Section 7 of the act of 1907 (Laws of 1907, p. 314,) imposes upon both the contractor and the owner the duty of complying with the provisions of such section so far as the civil liability is concerned, but where the owner lets the contracts for the various kinds of work to different contractors and never parts with the control or supervision of the building to any contractor, but retains control and supervision through his agent, the architect, he is subject to the civil liabilities provided by the act for a failure to comply with the requirements of said section.

9. SAME—*an architect in owner's employ is not an independent contractor.* An architect who does business for the owner of a building continually, and who prepares plans for a particular building and superintends the construction thereof by the different contractors to whom he has let the contracts for the various kinds of work, and issues vouchers from time to time, superintending the work throughout, for which he receives the customary compensation paid in such cases, is not an independent contractor.

10. SAME—*purpose of section 7 of act of 1907, requiring barriers to be placed around floor openings.* The purpose of section 7 of the act of 1907, requiring a barrier to be erected around a floor opening through which materials are hoisted by apparatus, is to protect all persons walking on the floor of the building from falling into the opening, except those engaged in unloading material, and if the barrier is unnecessarily placed so far from the opening that workmen must go between the barrier and the opening to perform their work, said section is not complied with.

11. EVIDENCE—*when evidence as to number and ages of children left by decedent is admissible.* In an action by the widow for a willful violation of the provisions of the act relating to the protection of persons in and about buildings being constructed or repaired, it is not error to admit evidence showing that the decedent left children surviving, and the number and ages thereof. (*Jones & Adams Co.* v. *George,* 227 Ill. 64, distinguished.)

APPEAL from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding.

H. B. BALE, and MORSE IVES, for appellant:

The statute here involved is repugnant to section 2 of article 2 and section 22 of article 4 of the constitution of Illinois. Section 7 of the act excludes hoists used for any other purpose than hoisting material to be used in constructing a building, and excludes openings in floors through which no hoists are being operated. Its language is plain and unambiguous and must be given its usual meaning. *Stuart* v. *Hamilton,* 66 Ill. 253; *Beardstown* v. *Virginia,* 76 id. 34; *Steere* v. *Brownell,* 124 id. 27; *Schaeffer* v. *Burnett,* 221 id. 315; *Diederich* v. *Rose,* 228 id. 610.

The court is not at liberty to insert in the statute words not used by the legislature. *Steere* v. *Brownell,* 124 Ill. 27.

The statute is penal. *Woolverton* v. *Taylor,* 132 Ill. 197; *Freese* v. *Tripp,* 70 id. 496; *Railway Co.* v. *Stanbro,* 87 id. 195.

Penal statutes must be strictly construed. *Railway Co.* v. *People,* 217 Ill. 164; *Hankins* v. *People,* 106 id. 628.

Whether the rules of strict or liberal construction be applied section 7 is unconstitutional, since the legislature cannot ameliorate the condition of men employed in constructing new buildings and leave unaided those employed in repairing, altering or removing old buildings. *Starne* v. *People,* 222 Ill. 189; *Off & Co.* v. *Morehead,* 235 id. 40; *Manowsky* v. *Stephan,* 233 id. 409.

The object of the section is to protect persons against falling material and from falling into the shaft. *McNeill* v. *Botsford-Dickinson Co.* 128 App. Div. (N. Y.) 544; *Mc-Hugh* v. *Railroad Co.* 133 id. 100; *Genovesia* v. *Operating Co.* 130 id. 200.

The section must operate uniformly upon all persons within its scope. *Lippman* v. *People,* 175 Ill. 101; *Horwich* v. *Laboratory Co.* 205 id. 497; *Gillespie* v. *People,* 188 id. 176; *Eden* v. *People,* 161 id. 296; *Mathews* v. *People,* 202 id. 389; *Badenoch* v. *Chicago,* 222 id. 71.

The act is such special legislation as to be a deprivation of property without due process of law. *Off & Co.* v. *Morehead,* 235 Ill. 40.

The same reasoning applies to six other sections of the act, and as the unconstitutional portions cannot be eliminated without causing results not contemplated by the legislature, the whole act must fall. *Mathews* v. *People,* 202 Ill. 389; *Coal Co.* v. *Harrier,* 207 id. 624; *Chicago* v. *Burke,* 226 id. 191.

The section (and six others) arbitrarily selects certain persons for protection and others for punishment, and does not treat alike all in similar situation and circumstances to those protected and punished. *Railway Co.* v. *Westby,* 178 Fed. Rep. 619; *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563; *Railway Co.* v. *Ellis,* 165 id. 150; *Connolly* v. *Sewer Pipe Co.* 184 id. 540; *Railway Co.* v. *Greene,* 216 id. 400.

If there be a statutory liability to the plaintiff under the facts of this case, it is a liability of the contractor and not of the owner. *Rooney* v. *Construction Co.* 194 N. Y. 32.

The court erred in admitting evidence of the number and ages of the children. *Railroad Co.* v. *Woolridge,* 174 Ill. 330.

JAMES C. McSHANE, for appellee:

Section 7, and the statute as a whole, is constitutional. The statute was designed more to give relief than to inflict punishment and should not receive a narrow construction. *Johnson* v. *Southern Pacific Co.* 196 U. S. 1.

If section 7 is constitutional it should be enforced, notwithstanding other sections might be held unconstitutional, if the former and latter are distinct and separable. *Railway Co.* v. *Jones,* 149 Ill. 387.

The defendant, as owner of the building, made contracts with various contractors for separate parts of the work of constructing the building, and hence section 7 cast upon it the duty of causing the shaft or opening here in question

to be guarded by barriers. *Conroy* v. *Acken,* 110 App. Div. (N. Y.) 50; *Rooney* v. *Construction Co.* 107 id. 258; *Arms* v. *Ayer,* 192 Ill. 601; *Landgraf* v. *Kuh,* 188 id. 484.

The architect was in charge of the construction of the building and was defendant's agent in that regard. 30 Am. & Eng. Ency. of Law, 1256.

The absence, at the opening in question, of such a barrier as the statute required was a proximate cause of deceased's death. The statute imposed a duty for the benefit of a class of persons embracing the deceased. *Rooney* v. *Construction Co.* 107 App. Div. (N. Y.) 259; *McNeill* v. *Botsford-Dickinson Co.* 128 id. 549; *Railroad Co.* v. *Gilbert,* 157 Ill. 354.

The admission of evidence as to the name and number of deceased's children was competent under the statute in question. *Beard* v. *Skeldon,* 113 Ill. 584.

Mr. JUSTICE FARMER delivered the opinion of the court:

This action was brought by the appellee, as widow of Charles F. Claffy, deceased, against appellant, for the death of said Charles F. Claffy. The action is based upon the alleged willful violation by appellant of section 7 of an act entitled "An act providing for the protection and safety of persons in and about the construction, repairing, alteration or removal of buildings, bridges, viaducts and other structures, and to provide for the enforcement thereof," approved June 3, 1907. (Laws of 1907, p. 312.) The suit was originally brought against appellant, as owner of a building in process of construction, and Henry Erickson, a contractor doing part of the work in constructing the building. The building was six stories high, and the declaration alleges there was an opening from the bottom to the top of the building through which material was elevated by a hoisting machine for use in the construction of the building, and that defendants willfully failed to cause the opening so used

to be fenced on all sides, as required by the statute, by reason of which the deceased, who was working upon a certain pipe near the opening in the floor, accidentally fell into and down the said shaft a distance of six stories, as a result of which he died. The cause was tried in the superior court of Cook county before a jury and a verdict returned against the defendants for $10,000. A motion for a new trial was made by both defendants, but before the motions were disposed of, in consideration of $2500 paid by the defendant Erickson, plaintiff gave him a covenant not to further prosecute the suit against him and said suit was dismissed as to him. Plaintiff below then remitted $2500 from the verdict, and the motion of the Chicago Dock and Canal Company, appellant, for a new trial was overruled and judgment rendered on the verdict against appellant for $7500. In the court below appellant contended that the act upon which the suit is based is unconstitutional, and has prosecuted an appeal direct to this court.

The entire act embraces nine sections, and, as indicated by its title, was intended to, and it appears does, provide for the protection and safety of persons engaged in the work of constructing, repairing, altering, removing or painting houses, buildings, bridges, viaducts or other structures. The particular section upon which this action is based, so far as material to the decision of this case, is as follows: "If elevating machines or hoisting apparatus are used within a building in the course of construction for the purpose of lifting materials to be used in such construction, the contractors or owners shall cause the shafts or openings in each floor to be enclosed or fenced in on all sides by a substantial barrier or railing at least eight feet in height." Section 9 gives a right of action to the party injured, for an injury caused by any willful violation of or failure to comply with any of the provisions of the act, and in case of loss of life by reason of such willful violation or failure, a right of action is given the widow of the person killed, his

lineal heirs or adopted children, or other person or persons who were dependent for support on the person killed, for damages for injuries so sustained.

Briefly stated the facts are, that on October 19, 1908, appellant was the owner of a six-story building then in course of construction in the city of Chicago. The building was near completion. Through the several floors of the building there were three openings, which ran from the bottom to the top, in each of which elevators were operated by hoisting machines for the purpose of lifting material used in the construction of the building. The opening through which the deceased fell was on the sixth floor, and was nine feet long from east to west and six feet and eight inches wide from north to south. This opening was protected on the west, north and east by a plank nailed to posts on each of the three sides. The plank on the north side was about three and one-half feet from the edge of the opening. Deceased was a plumber, and on the day in question was making a change in a heavy iron pipe which was about three feet or a little more north of the opening and between the protecting plank and said opening. He was attempting to screw up the pipe with a wrench about three feet long and a chain attached to the pipe, just before he fell. In some manner he fell through the opening to the bottom of the building and was killed. No one saw him fall but he was seen at work just before falling. It is probable that while turning the pipe, with the wrench as a lever, the lever slipped and he lost his balance and fell into the opening.

The right of action being given to the widow, there is no claim of a right to recover except under the provisions of the statute referred to, and appellant contends that section 7 of said act is unconstitutional, in that it is in violation of section 22 of article 4 and section 2 of article 2 of the constitution of the State of Illinois. It is claimed that said section is special legislation, in that it does not apply to all persons similarly situated and under like conditions;

that hoisting apparatus of similar character is used not only in the construction of buildings, but also in the repair, alteration and removal of buildings, and that persons engaged in such work are not embraced in the statute.

In an elaborate and able argument counsel for appellant take up and discuss every provision of the act, section by section, in an effort to show that the entire act is unconstitutional, but except for the purpose of ascertaining the legislative intent in the proper construction to be given section 7 we are concerned, in the decision of this case, only with said section 7. Counsel contend, as above stated, that this section violates the constitutional provisions referred to because it affords protection only to persons engaged in the construction of buildings where elevating machines or hoisting apparatus are used, and does not apply to persons engaged in the repair, alteration or destruction of buildings where like hoisting apparatus · or elevating machines are used. It is also contended the law is invalid because it attempts to impose a liability upon contractors and owners in the construction of buildings, but exempts contractors and owners engaged in using like elevating machines or hoisting apparatus . in repairing, altering or demolishing buildings.

We are not prepared to hold that if section 7 is required to be construed as applying only to buildings in process of construction that it is invalid. The legislature has power to form classes for the purpose of police regulation if it does not arbitrarily discriminate between persons in the same situation. (*Lasher* v. *People,* 183 Ill. 226.) The statute under consideration is an exercise of the police power by the legislature, and appellant concedes its application to all buildings in process of construction. But we do not agree that the construction contended for by appellant is required to be given said section. In *Lane* v. *Dorman,* 3 Scam. 238, it was said that in determining the constitutionality of statutes it is the duty of courts to sustain and give effect to

them except in cases of clear necessity and where they are in plain and obvious conflict with the constitution. This rule has never been departed from by this court but has been repeated in slightly different language in a large number of decisions down to the present 'time. In *People* v. *McBride,* 234 Ill. 146, the rule that has always been followed by this court, as shown by previous decisions, in determining the constitutionality of statutes, was stated in the following language (p. 165): "The rule of law is, that an investigation like this, concerning the constitutionality of an act of the legislature, begins with the presumption that the act is valid. All doubts or uncertainties arising either from the language of the constitution or the act must be resolved in favor of the validity of the act, and the court will only assume to declare it void in case of a clear conflict with the constitution. The duty of the court is to so construe acts of the legislature as to uphold their constitutionality and validity if it can reasonably be done, and if their construction is doubtful the doubt will be resolved in favor of the law." This rule is not peculiar to the courts of this State but is the one generally adopted and followed by all courts throughout the country. The legislature may, and sometimes does, pass acts which violate constitutional provisions, and where this clearly appears it is the duty of courts to hold such acts invalid, but it is never to be assumed that the legislature intended to exceed its constitutional authority by the passage of any statute in conflict with the paramount law. An examination of the entire act of which section 7 now under consideration forms a part, will clearly show that it was the intention of the legislature to require owners and contractors constructing, repairing, altering or painting the buildings and structures mentioned in the act, to provide for the protection and safety of the men engaged in the work. While it is true section 7 specifically mentions only buildings in the course of construction, we think it was clearly the legislative intent that the

requirement that openings by means of which material is conveyed to the place where needed for use by hoisting apparatus or elevating machines should be fenced by a substantial barrier, applies to buildings undergoing repair or alteration where elevating machines or hoisting apparatus are used as well as to buildings in the course of construction. A brief reference to the sections of the act, we think, makes the legislative intent clear.

Section 1 relates to scaffolding required for use in the erection, repairing, alteration, removal or painting of any building or structure. Section 2 provides that in buildings (except private residences) in process of erection or construction, where the distance between the enclosing walls is more than twenty-four feet, there shall be kept proper intermediate supports for the joists, so that the floors will be capable, in addition to their own weight, of supporting a live load of fifty pounds for every square foot of surface in such floors. Section 3 provides that it shall be the duty of the owner of every house, building or structure (except a private house used exclusively as a private residence) in process of construction, to fix and display conspicuously on each floor a placard stating the load per square foot of floor surface which may with safety be applied to that particular floor. Section 4 relates to inspection by the State factory inspector, of scaffolding, hangers, blocks, pulleys, stays, braces, ladders, ropes, etc., used in the construction, alteration, repairing, removing, cleaning or painting of buildings and other structures. Section 5 deals with the supports used by persons in erecting, repairing, altering or painting water pipes, stand pipes, tanks, smoke-stacks, chimneys, towers, poles, staffs, etc., where the use of any scaffolding, staging, swing, hammock, support, temporary platform or other similar contrivance is required. Section 6 prescribes the requirements for the construction of floors when buildings are being constructed, so as to make their use safe during the progress of the work.

While sections 2, 3, 6 and 7 contain no specific mention of buildings being repaired, altered or removed, the obvious purpose of the act, as we have said, is to provide protection for workmen against injuries while engaged in constructing, repairing, altering or removing buildings, and it is doing no violence to the rules of construction to hold that the act imposes the same obligation of protection against injuries from the same dangers in altering, repairing or removing a building that is required in case of the construction of a building. It is a matter of common knowledge that ordinarily in repairing, altering or demolishing buildings hoisting machines are not used. The conditions under which such machinery would be required to be used in that work would be such that the provisions relating to the protection of the workmen engaged in the construction of buildings would apply. We think this the evident intent and meaning of the legislature, and to give effect to this intent does no violence to the language used in the act. In our opinion, therefore, section 7 is not invalid, and in the decision of this case we are not required to pass upon the validity of any other section.

Section 7 provides that "the contractors or owners" shall cause the openings to be enclosed, and it is contended that under the facts of this case the duty of complying with the requirement of the statute was imposed upon the contractor and not upon the owner. The proof shows that there was no general contractor having a contract for the construction of the entire building, but separate contracts were let to different contractors for brick work, carpenter work, iron work, roofing work, sheet-metal work plumbing, steam fitting, glazing, painting, etc. Erickson was the contractor for the brick work. Christian A. Eckstrom testified he was the architect and did business for appellant continually and prepared the plans for the building in question. It is a six-story building, between 1200 and 1300 feet long, and was erected in five sections. Eckstrom testified

appellant relied upon him to superintend the work, and that he let the contracts to the various contractors and they were signed by appellant. The witness looked after the work done by the various contractors, and during a part of the time the work was in progress was at the building every day and at other times was there three or four times per week. He issued vouchers, upon which the contractors were paid from time to time as the work progressed, and superintended the work throughout, for which he received the customary compensation paid architects in such cases.

A statute of the State of New York similar to section 7 of our act was before the court in *Rooney v. Brogan Construction Co.* 107 App. Div. 258. The case went to the Court of Appeals and is reported in 194 N. Y. 33. In that case, as in this, there were as many contractors in the construction of the building as there were different kinds of work, and the Appellate Division held that in such cases the duty of protecting the openings by barriers was imposed upon the owner of the building. This point was not decided by the Court of Appeals but was discussed to some extent in the opinion, where it was said, in substance, that whether compliance with the statute rested upon both owners and contractors, irrespective of the question of the control of the building, was open to grave doubt; that it would seem the more reasonable construction to hold that such duty was imposed only upon the person who had possession and control of the building, and that it was a joint duty where both owner and contractor exercised control. The court said if the work was done by an independent contractor whose contract gave him exclusive control of the building until its completion, it would doubt whether the owner would be held responsible for a failure to comply with the requirements of the act. But in the case under consideration the court said the evidence left considerable doubt whether the owner ever did part with its control and

supervision of the building, but the inference was that it did not.

In our opinion it was intended by section 7 to, and said section 7 does, impose upon both the contractor and the owner the duty of complying with the provisions of said section so far as civil liability is concerned, but under the facts in this case the owner never parted with the control and supervision of the building to any contractor, but through its agent, the architect, retained control and supervision of the work and was subject to the civil liabilities provided by the act for a failure to comply with the requirements of section 7. We cannot agree with the contention of appellant that the architect, under the facts in this case, can be considered as an independent contractor having exclusive control and charge of the building and the work.

It is also contended that there was a barrier erected for the protection of the opening through which the deceased fell, and his death, therefore, was not caused by a failure to provide the protection required by section 7. There was a barrier on three sides of the opening and the deceased fell from a place where he was working inside of a barrier on the north side of the opening. It is insisted that as the statute does not provide that the barrier shall be flush with the edges of the opening, nor that it shall be erected any distance from the opening, the barrier provided in this case was a compliance with the statute. The statute was designed to protect all persons working on the floor of the building from walking or falling into the opening, except those who were engaged in unloading material from the elevators raised through the shaft. If the barrier could be lawfully erected at such a distance from the opening that workmen other than those engaged in unloading material were required to go inside of it to perform their work, as to such persons it would afford no protection and the purpose for which the barrier was erected would fail. The

proof here shows deceased was engaged in the performance of his duties at the time he fell into the opening. No reason appears why the barrier on the side where he was working could not have been so placed that he would not have been required to go inside of it to perform his work. There was ample room to have placed the barrier between the pipe deceased was working on and the edge of the opening, and had this been done it would have been a protection to him, but as erected it was no protection whatever while doing the work he was engaged in when he fell into the opening. The barrier required to be erected must be so placed as to afford protection to men engaged in their work, and unless it is so placed it is not a compliance with the statute.

On the trial appellee was permitted, over objections of appellant, to testify that deceased left surviving him seven children, the oldest, at the time of the trial, being eleven years of age and the youngest twenty-two months. This, it is insisted, is reversible error. *Beard* v. *Skeldon,* 113 Ill. 584, was an action brought by a widow under the Miners act for the death of her husband, caused by willful failure of the defendant to comply with the requirements of the statute for the protection of miners. That statute gave a right of action to the same persons for a death caused by its willful violation that the right of action is given to by the statute here under consideration for a willful violation of its provisions. The court instructed the jury in that case that in making their estimate of the damages sustained by the widow they were authorized to take into consideration whether or not deceased left surviving him, in addition to the widow, any children. The plaintiff below recovered a judgment, and on appeal to this court by the defendant it was insisted that the giving of this instruction was reversible error. The court said there could be but one recovery for the entire loss, and that where the deceased left a widow she was the proper person to sue and recover for the loss, and that all damages occasioned by the death must be re-

covered in one suit, and there could be no recovery by each of the three classes to whom a right of action was given. If the deceased left no widow then the right of. action was in his lineal heirs or adopted children, or any person or persons who were before the death dependent upon the deceased for support. The ruling of the trial court in giving the instruction was sustained. It would seem that if in an action by a widow under such a statute a jury is authorized to take, into consideration whether the deceased left any children it would not be erroneous to prove whether he left any children, for the jury could not take that matter into consideration unless it was proven. The proof in this case upon that question was limited to the number and ages of the children. Suits under a statute like the one here involved, when plaintiff is the widow and there are children of the deceased who would have had a right to maintain the action if there had been no widow but the entire damages must be recovered in one action, are distinguishable from *Jones & Adams Co.* v. *George, 227* Ill. *64,* and other like cases for damages under the Injuries act. Proof, under the Injuries act, (Hurd's Stat. chap. 70,) of the number of children the deceased left surviving him in addition to the widow, and that the deceased contributed ·to their support, without attempting to show the poverty or helplessness of the family or their pecuniary circumstances, has sometimes been held not reversible error. *Pennsylvania Co.* v. *Keane,* 143 Ill. 172; *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Kinnare,* 203 id. 388.

We are of opinion there is no error in this record that would justify a reversal of the judgment of the superior court, and it is affirmed.        *Judgment affirmed.*