NANCY C. KING, Plaintiff-Appellee, *v.* GENE P. KING, Defendant-Appellant.

Fourth District   No. 14342

Opinion filed September 30, 1977.

Summers, Watson & Kimpel, of Champaign, for appellant.

Burt Greaves, of Champaign, for appellee.

Mr. JUSTICE SLATER delivered the opinion of the court:
This action arises out of a complaint for separate maintenance brought

by Nancy C. King against Gene P. King. The case was heard by the court without a jury. The court entered a decree of separate maintenance and ordered the defendant to pay plaintiff's attorney fees in the amount of $6,000. The defendant appeals from the order to pay the fees.

There are two bases for the appeal. First, that an attorney-client relationship had existed between plaintiff's attorney and defendant, such that the attorney was barred from undertaking subsequent employment adverse to defendant's interest. Second, that the fee awarded was unreasonable. Because of the disposition ordered, it is necessary to address only the first issue.

The pertinent facts are these. Defendant visited the law office of Burt Greaves on October 27, 1973, to discuss his marital problems. He was in the office for less than one-half an hour. On October 14, 1975, plaintiff filed a complaint for separate maintenance. Greaves was her attorney. On October 21, 1975, defendant moved to exclude Greaves as attorney for the plaintiff for the reason that defendant had revealed confidences to Greaves. The motion was verified and an affidavit was attached to the motion which stated as follows:

"Gene P. King, being duly sworn upon his oath, deposes and says:

1. That he is the defendant in cause No. 75-C-1002 presently pending in the Circuit Court of Champaign County in which Nancy C. King is the Plaintiff.

2. That on or about October 27, 1973, he went to the office of Attorney Burt Greaves and discussed with him his marital problems with his wife who is the Plaintiff in this cause.

3. That in the course of said conference, the defendant Gene P. King revealed to Attorney Burt Greaves confidential matters pertaining to the domestic problems between himself and his wife including his financial situation, his thoughts relative to separation and divorce and in general what his future plans and actions would be.

4. That the Defendant believes that the information obtained in confidence from the defendant by said attorney could operate to his disadvantage in the present litigation.

5. That the defendant believed at the time he revealed said information to the said attorney that it would be held in confidence and it would not be disclosed to any other person and it was within the pervue of the attorney-client relationship."

Mr. Greaves filed an unverified answer to the motion and did not attach any affidavit. A hearing was held on the motion. At the hearing, Gene King testified:

"Well, we discussed the problems that Nancy and I were having and the possibility of pending a divorce, and discussed salary, the

salary that I made, and also discussed some of the aspects of the practice that I am in, as far as way of a set up as a corporation and set up."

The defendant further stated that he intended that the disclosures that he had made to Greaves would be held in confidence.

At the hearing on the motion to exclude, Mr. Greaves presented no evidence on his own behalf. The motion to exclude Mr. Greaves was denied but there were no reasons for the ruling in the record.

A decree for separate maintenance and support was entered on March 26, 1976. On March 26, 1976, Greaves filed a motion for allowance of his fees in the amount of $10,000. After a hearing, the trial court allowed fees in the amount of $6,000.

■■ The affidavit and testimony of Gene King discloses that he went to the office of Greaves for the purpose of obtaining professional advice pertaining to his marital problems. Since his affidavit and testimony were not controverted, the court must accept them as being correct. The matter that he had discussed with Greaves concerned the same problem out of which this lawsuit arose.

■■■ Gene King did not expressly retain Greaves as his attorney to proceed with litigation between himself and his wife. However, the statements of Gene King show that an attorney-client relationship did arise to the extent that any communication between Gene King and Greaves would be privileged.

> "At the inception of the contacts between the layman and the lawyer it is essential that the layman feel free of danger in stating the facts of the case to the lawyer whom he consults. Even though the lawyer rejects the case and the relation of attorney and client never arose, the usual duties as to privileged communications and conflicting interests should apply." Patterson and Cheatham, The Profession of Law 246 (1971).

■■ Without question, if Nancy King had retained an attorney other than Greaves to represent her in this lawsuit, she could not have called Greaves as a witness to divulge information received from Gene King during this interview. Greaves would have been precluded by the attorney-client privilege from doing so. The same consideration should preclude an attorney from accepting adverse employment.

The rule is familiar, and is well stated in *People v. Gerold* (1914), 265 Ill. 448, 477-78, 107 N.E. 165:

> "The rule has long been firmly established that an attorney cannot represent conflicting interests or undertake to discharge inconsistent duties. When he has once been retained and received the confidence of a client he cannot enter the service of those whose interests are adverse to that of his client or take employment

in matters so closely related to those of his client or former client as in effect to be a part thereof. * * * It is the glory of the legal profession that its fidelity to its clients can be depended upon; that a man may safely go to a lawyer and converse with him upon his rights in litigation with absolute assurance that that lawyer's tongue is tied from ever discussing it."

■■ The rule applies even though the attorney acquired no knowledge which could operate to the client's disadvantage. The motives or intentions of the attorney are unimportant. (*Gerold.*) It makes no difference that the client offered no compensation and the attorney neither made nor expected to make any charge for his services. *Dickerson v. Dickerson* (1926), 322 Ill. 492, 153 N.E. 740.

■■ We find that the attorney-client relationship did exist between Mr. Greaves and Mr. King. It was improper for Mr. Greaves to then undertake the representation of Mrs. King in resolving the couple's domestic problems.

■■ An attorney cannot recover from the party that he has wronged for legal services where he has represented adverse, conflicting, and antagonistic interests in the same litigation. *Strong v. International Building Loan & Invest. Union* (1899), 183 Ill. 97, 55 N.E. 675; *Gary v. Beadles* (1916), 202 Ill. App. 58; *Beerly v. The Wm. Meyer Co.* (1947), 332 Ill. App. 653, 75 N.E.2d 783 (abstract).

So much of the decree of the trial court as provides for the award of attorney fees to Mr. Greaves is reversed.

Decree affirmed as to all other matters, reversed as to attorney fees.

CRAVEN, P. J., and REARDON, J., concur.