## WILLIAM E. HUGHES

### v.

## HARTFORD FIRE INSURANCE CO. ET AL.

1. SUBROGATION.—While the right of subrogation does not arise by contract, such a right, like all other legal or equitable rights, may be qualified or extinguished by contract.

2. CONSTRUCTION OF CONTRACT.—The court is of opinion that the construction of the contract of assignment in this case is, that $5,000 of the money to be realized out of the judgment was to be paid to appellees when collected from the railroad company, and as the amount was paid at the time agreed appellees are not entitled to interest.

APPEAL from the Circuit Court of McLean county; the Hon. O. T. REEVES, Judge, presiding. Opinion filed December 4, 1885.

Mr. WILLIAM E. HUGHES, for appellant; that a court of equity can not change a contract, cited Vallette v. White Water V. C. Co., 4 McLean, 192 ; Cassady v. Woodbury, 13 Ia. 113.

Messrs. STEVENSON & EWING and Mr. HAMILTON SPENCER, for appellees.

CONGER J.    This was an agreed case the facts of which necessary to an understanding of the point at issue are substantially as follows:

February 14, 1872, the Normal Hotel, a building owned by William A. Pennell, at Normal, Ill., was destroyed by fire, through the negligence, as alleged, of the Chicago & Alton R. R. Co. A suit was instituted against the railroad company for the loss, which finally resulted in a judgment against the company on the 17th day of April, 1882, for $18,000, and on the 17th day of September, 1884, the company paid this judgment, which, with interest thereon, amounted to $20,-527.40 to the clerk of the Circuit Court of McLean county.

When the building was burned the Hartford Fire Ins. Co. and the Ætna Fire Ins. Co. each had a policy of $2,500 thereon, which, within sixty days after the loss, they paid to

Pennell, and afterward, in 1877, filed their bill of interpleader against said Pennell and others, claiming the right to be subrogated to the amount of the $5,000 they had paid. The bill was dismissed by the circuit court, and on appeal to the appellate court this decision of the circuit court was reversed and the cause remanded; whereupon, instead of re-docketing the case, the parties made an agreement setting forth that the insurance companies should pay Pennell $250, as their contribution to the costs and expenses of prosecuting the suit against the railroad company; should also furnish attorneys to assist in such suit; and Pennell, in consideration thereof, recognizes the right of the insurance companies to be subrogated to any judgment recovered against the railroad company, and agrees to waive further claim on them for contribution for costs and expenses. April 22, 1882, being a few days after the recovery of the judgment against the railroad company, Pennell assigned the same to Wm. E. Hughes, and Wm. D. Haynie for various purposes, one of which is expressed in the following language, i. e.:

"The sum of $5,000 is to be received by said Wm. E. Hughes in trust for said Hartford Fire Ins. Co., and the Ætna Fire Ins. Co., in full of their rights of subrogation to said judgment, to be paid to them, or to their attorneys, $2,500 to each company with full power hereby given to said Hughes to re-assign out of the judgment the amount so secured above to said insurance companies or their attorneys. The residue of the said judgment and *interest*, and all my right, title and interest therein, is hereby assigned absolutely to Wm. E. Hughes, to pay him for his time and attention to said cause, etc." To carry out the foregoing assignment, Wm. E. Hughes, on the 25th of April, 1882, executed to Jas. S. Ewing, as attorney for the two insurance companies, an assignment which, after reciting the provision above set forth, says:

"Now, therefore, by virtue of the said assignment so made to me by the said Wm. A. Pennell, I do hereby transfer, set over and assign to James S. Ewing, attorney for the Hartford Fire Insurance Company, and for the Ætna Fire Insurance Company, the sum of $5,000, part and parcel of the said judg-

ment now remaining of record in the McLean Circuit Court, to be paid out of said judgment when collected, in favor of Wm. A. Pennell, plaintiff, and against the C. & A. R. R. Co., defendant, dated on or about April 17, 1882, and the said Ewing is hereby authorized to receipt for and settle the said part of said judgment hereby assigned to him, etc."

On the 18th day of September, 1884, being the next day after the railroad company paid into court the amount of the judgment against it, by the consent and agreement of counsel the sum of $5,000 was paid to Ewing for the two com anies by the clerk of the court, under an order of the court directing such payment.

Upon the foregoing facts it is claimed by the insurance companies that they are entitled to receive so much of the interest upon said judgment of $18,000 against the C. & A. R. R. Co. as accrued upon their $5,000, amounting to $725, and the circuit court so held, which decision is assigned for error.

It is insisted by appellant that the rights of the appellees arise out of and must be governed by the contract of assignment; while appellees deny this proposition and urge that no claim for subrogation ever grows out of a contract. It arises, if at all, by operation of law, and that appellees' right of subrogation arose at the moment they paid the amount of their insurance.

We fully assent to this latter proposition, but are unable to see its application to the case at bar. While it is true the right of subrogation does not arise by contract, such a right, like all other legal or equitable rights, may be qualified, or extinguished by contract. We are therefore of opinion that the question presented must be determined by the construction to be given to the assignments; for whatever the original rights of the parties may have been under the doctrine of subrogation, they are now controlled and defined by the contract of assignment.

By the assignment of Pennell it will be noticed it is the *sum* of $5,000 that is to be received by Hughes in trust for the insurance companies, to be paid to them, with full power

given Hughes to re-assign, *out of* the judgment, the amount so secured, leaving the residue of the judgment and *interest* in Hughes as compensation for his services to Pennell.

It is not a portion of the judgment itself which is thus transferred, but a sum of money to be paid *out of* the judgment. In Hughes' assignment the same language is used, except the words "part and parcel of the said judgment" are added; but these words do not change the meaning it had before; they only serve to point out more definitely the source from which the money was to be derived.

Again, the language, "to be paid out of said judgment when collected," is inconsistent with the theory that a portion of the judgment itself was intended to be transferred, for in such case the assignee would own and control such portion so assigned him, and the further statement that such portion should be paid him would be useless.

We think the reasonable construction of all the language contained in the two assignments is, that $5,000 of the money to be realized out of the judgment was to be paid to appellees when collected from the railroad company. The amount was so paid in strict accordance with the terms of the contract, and at the time agreed upon, and therefore we think appellees were not entitled to the interest claimed, but that it must be left in the hands of appellant, where it seems Pennell, by his deed of assignment, intended to leave it. The judgment will be reversed and the cause remanded.

Reversed and remanded.