WILLIAM F. PAGE, Plaintiff-Appellee, v. GENE HIBBARD, *et al.*, Defendants (The Department of Law Enforcement, Intervening Plaintiff-Appellant).—WILLIAM F. PAGE, Plaintiff-Appellee and Cross-Appellant, v. GENE HIBBARD, *et al.*, Defendants (The Department of Law Enforcement, Intervening Plaintiff-Appellant and Cross-Appellee).

Fourth District   Nos. 4—85—0535, 4—85—0621 cons.

Opinion filed April 14, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Eugene P. Schmittgens, Jr., Assistant Attorney General, of Chicago, of counsel), for appellant.

Raymond Lee, Jr., of Lee & Lee, Ltd., of Tuscola, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

A hearing was held for the purpose of determining who was entitled to the proceeds of a settlement in a case entitled Page v. Hibbard. The settlement was for the amount of $24,000. The circuit court found that the Illinois Department of Law Enforcement (Department) was entitled to $12,000 of this amount plus accrued interest due to their statutory right of subrogation pursuant to section 5(b) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1983, ch.

48, par. 138.5(b)) and that Barbara L. Page was entitled to the remaining $12,000 plus accrued interest for loss of consortium. The circuit court also held that Raymond Lee, Jr., attorney for plaintiffs, was entitled to 25% of the amount received by the Department, pursuant to section 5(b) of the Act. The Department appeals the decision of the circuit court, alleging that section 5(b) of the Act entitles the Department to the entire proceeds of the settlement, and that plaintiff's attorney is not entitled to any of the money awarded to the Department. William F. Page filed a cross-appeal, claiming that he was entitled to $6,000 of the proceeds as compensation for pain and suffering.

We affirm in part and reverse in part.

William F. Page is a State trooper in the employ of the Illinois Department of Law Enforcement. On May 2, 1981, Mr. Page was informed that other officers were involved in a high-speed chase on Route 36 near Tuscola. Mr. Page proceeded in his squad car to the scene of the chase and employed a "rolling road block" to stop a car which he estimated to be travelling at a speed of approximately 100 miles per hour. By employing this maneuver, Mr. Page's squad car collided with a car driven by defendant Gene Hibbard, and owned by defendant Freda Brookmeyer.

Mr. Page suffered extensive injuries as a result of the collision, including muscle damage to his neck and left shoulder, and damage to his back. The injury to Mr. Page's back necessitated surgery for the removal of a disk. An arbitrator for the Industrial Commission of Illinois found that Mr. Page had a permanent partial disability to the extent of 18%.

As of May 6, 1985, the Department paid for defendant's medical bills in the amount of $9,868.15. The Department also made a payment to Page in the amount of $25,402.50, pursuant to a decision of the arbitrator of the Illinois Industrial Commission. Page also received $7,224.73 as compensation for salary lost due to the fact that he was unable to work for a period of time. The total amount the Department paid to or on behalf of Mr. Page was $42,495.39.

Mr. Page testified at the hearing that he still suffered pain as a result of his injuries. Mrs. Page testified that her husband no longer participates in many of the activities he previously enjoyed, and that her relationship with her husband has been significantly affected in a negative manner. Mrs. Page did not file a suit for loss of consortium; however, she did discuss her rights with an attorney.

Both defendants left the State of Illinois after the collision, and both defendants also filed for bankruptcy. The only asset that was

available to satisfy claims arising out of the collision was an insurance policy with Cincinnati Insurance Company. This policy had a $25,000 liability limit.

The underlying suit was settled with the insurance company for $24,000. Both Mr. and Mrs. Page signed a document releasing defendants and their agents (*i.e.*, the insurance company) from all claims they had arising from the collision described above. Mr. and Mrs. Page were both payees on the check issued by the insurance company.

The release contained the following language:

"It is expressly agreed that the consideration for this release includes and is in payment for the following elements of injury or damage allocated as follows:

1) to Barbara L. Page for loss of consortium—$12,000.

2) to William F. Page for pain and suffering—$6,000.

3) to William F. Page for all other elements of damage, including, but not limited to, medical expenses and physical disability—$6,000."

The Department consented to the release of defendants and their insurance company, but did not consent to plaintiff's proposed distribution of the proceeds, as contained in the release. The Department filed a lien that was in excess of the amount of the proceeds of the settlement.

On May 6, 1985, a hearing was held to determine who was entitled to the proceeds of the settlement. The circuit court judge filed a memorandum opinion in the case, holding that "[t]he intention of the parties is clearly set forth in the release which was admitted into evidence as plaintiff's exhibit no. 1. This release controls the allocation of the settlement proceeds and the persons who are entitled to the same." The circuit court further held that: (1) Mrs. Page was entitled to $12,000 plus accrued interest for loss of consortium; (2) the Department was entitled to the remaining $12,000 plus accrued interest; and (3) that the Department was obligated to pay plaintiff's attorney 25% of the amount recovered by the Department.

The first issue raised in this appeal is whether the circuit court erred in awarding Mrs. Page $12,000 plus accrued interest for loss of consortium.

■ The Department contends that the circuit court lacked jurisdiction to enter its order as to Mrs. Page because she was not a named party to the suit. Contrary to the Department's contention, we believe that the circuit court did have jurisdiction over Mrs. Page by consent. (See *Rabbitt v. Weber & Co.* (1921), 297 Ill. 491, 130

N.E. 787; 14 Ill. L. & Prac. *Courts* sec. 19, at 188 (1968).) Mrs. Page's name was on the settlement check and the account in which the settlement proceeds were deposited. Mrs. Page was an indispensable party to the proceedings since the purpose of the hearing was to determine how much of the settlement proceeds each of the payees was entitled to. Therefore, the Department's contention that the circuit court lacked jurisdiction over Mrs. Page is without merit.

█ The Department argues that section 5(a) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.5) provides that the relief afforded by the Act is the exclusive relief afforded not only the employee but also to the employee's dependents or anyone else entitled to recover damages for the employee's injury.

In relevant part, section 5(a) of the Act provides that:

"(a) No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representative of his estate, or any one otherwise entitled to recover damages for such injury." Ill. Rev. Stat. 1983, ch. 48, par. 138.5(a).

The Department relies on *Fregeau v. Gillespie* (1983), 96 Ill. 2d 479, 451 N.E.2d 870, as the basis for this "exclusivity" argument, and sets forth the following quote in its brief: "With near unanimity courts interpreting exclusivity provisions with this or comparable language have held that the provisions preclude actions by a spouse of the employee for loss of consortium." 96 Ill. 2d 479, 486, 451 N.E.2d 870, 873.

*Fregeau* involved an intentional tort by a co-employee. The supreme court in *Fregeau* made it clear that the exclusivity provision in section 5(a) of the Act operates to prohibit an action by an employee against a co-employee, and also bars an action by a spouse of the employee against the co-employee for loss of consortium. However, the opinion in *Fregeau* does not address the situation where a third-party tortfeasor, totally unrelated to the employer or the business, is involved. For this reason, the passage quoted above is clearly not applicable to the fact pattern in this case.

If the argument of the Department in this regard is taken to its

logical conclusion, neither Mr. Page nor Mrs. Page had a cause of action after receiving benefits under the Act. Since the Department, as subrogee, stands in the position of the Pages, the Department would also be precluded from recovering any money from a third-party tortfeasor.

In arguing that the exclusivity provision in section 5(a) precludes a suit by Mrs. Page against a third-party tortfeasor, the Department totally ignores the first sentence of section 5(b), which provides in relevant part:

> "(b) Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act." (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b).)

Section 5(b) makes it clear that the exclusivity provision contained in section 5(a) does not apply to cases where a third-party tortfeasor is involved. Therefore, this "exclusivity" argument is totally without merit.

■ The Department also argues that numerous Illinois court decisions have held that pursuant to section 5(b) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b)) the employer's workers' compensation lien attaches to the proceeds distributed to the dependents of the injured worker. The second sentence of section 5(b) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b)) reads as follows:

> "In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative ***." Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b).

The Department cites four cases as support for the proposition that its lien should attach to the award to Mrs. Page. The first case cited by the Department is *Denius v. Robertson* (1981), 98 Ill. App. 3d 83, 424 N.E.2d 336. *Denius* was injured in an automobile accident while acting within the scope of his employment, and he subsequently died as a result of these injuries. The employer's insurance

company paid medical, burial, and other expenses, and the Illinois Industrial Commission ordered the insurance company to pay the widow $160 per week for the remainder of her life. A suit was filed by the administrator of the decedent's estate against the third-party tortfeasor for personal injuries and wrongful death, and the employer and insurance company intervened to protect their lien. The trial court refused to award the insurance company the full lien on the future payments to the widow. The appellate court reversed this decision, stating that the insurance company "is entitled to reimbursement for its payments out of any settlement reached between plaintiff's estate and the third-party tortfeasor." 98 Ill. App. 3d 83, 86, 424 N.E.2d 336, 339.

The Department also cites *Prince v. Atchison, Topeka & Santa Fe Ry. Co.* (1979), 76 Ill. App. 3d 898, 395 N.E.2d 592, *Jones v. Melroe Division, Clark Equipment Co.* (1981), 102 Ill. App. 3d 1103, 430 N.E.2d 1385, and *Hartford Accident & Indemnity Co. v. D.F. Bast, Inc.* (1977), 56 Ill. App. 3d 960, 372 N.E.2d 829, stating that these three cases are similar in their results to *Denius*. All three of these cases involved the death of an employee. In *Prince* and *Jones*, the cases were filed by a widow in her representative capacity as administrator or executrix of the estate of the deceased. *Hartford* involved settlements of wrongful death claims between an insurance company and children of the decedent. The *Hartford* court set forth the relevant provisions of section 5(b) and stated:

"We interpret the above quoted provisions to mean that an employer has a lien right against any monies paid by a third party tortfeasor as a result of the injury or death of the employee." 56 Ill. App. 3d 960, 965, 372 N.E.2d 829, 834.

Furthermore, in *Chicago Transit Authority v. Yellow Cab Co.* (1982), 110 Ill. App. 3d 379, 442 N.E.2d 546, the court, interpreting section 5(b) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b)), stated:

"An employer has a workers' compensation lien for the amount of benefits paid against any judgment recovered from a third-party tortfeasor as a result of an employee's injury." *Chicago Transit Authority v. Yellow Cab Co.* (1982), 110 Ill. App. 3d 379, 384, 442 N.E.2d 546, 550.

Both parties agree that the precise issue of whether an employer's lien attaches to a spouse's loss of consortium claim has not been decided in any reported Illinois cases. We have similarly been unable to find any Illinois cases which have decided this issue. We believe that the statement by the courts in *Hartford* and *Chicago Transit*

*Authority* to the effect that an employer's workers' compensation lien attaches to any money recovered from a third-party tortfeasor as a result of an employee's injury are consistent with the legislative intent underlying the Act. We believe, as did these courts, that the legislature intended to allow an employer's lien to attach to any money recovered from a third-party tortfeasor as a result of an employee's injury, and we believe that this is true regardless of to whom the money is paid. Therefore, we reverse the order of the circuit court awarding $12,000 plus accrued interest to Mrs. Page for loss of consortium, and hold that the Department's lien attaches to the entire amount which was awarded to Mrs. Page.

The second issue involved in this appeal is whether the circuit court erred in not allowing Mr. Page to recover $6,000 as pain and suffering damages since he was not compensated for these specific damages by workers' compensation.

■ Mr. Page, in his cross-appeal, alleges that the circuit court erred in holding that the Department's lien attached to the $6,000 which he claimed pursuant to the settlement agreement as compensation for his pain and suffering. Mr. Page claims that workers' compensation does not compensate an employee for pain and suffering. The Department concedes that pain and suffering are not compensated under workers' compensation.

The Illinois Supreme Court, in *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 7, 269 N.E.2d 295, 298, stated:

"In Illinois, the Workmen's Compensation Act provides in substance that an employee who has received compensation under the Act is required to reimburse the employer from any recovery the employee received from a third party legally responsible for the employee's injuries. The obligation is to reimburse for the full amount of benefits paid or payable by the employer and a lien in favor of the employer is provided upon any recovery by the employee for the amount of the benefits. [Citation.] The employee is entitled to retain only that portion of a recovery from the tortfeasor which exceeds the benefits received under the Act from the employer."

As stated by the circuit court in the memorandum opinion, the statement in *Ullman* quoted above makes it clear that "[t]he obligation of reimbursement of the employer is absolute; the source of funds for such reimbursement is *any* judgment or *any* settlement received by the employee on account of such injury."

■ Mr. Page also alleges that the circuit court violated his constitutional rights to due process and equal protection under both

State and Federal constitutions because the Department was permitted to recover for an element of damages for which it had paid nothing. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, sec. 2.

We believe that Mr. Page waived his right to challenge the constitutionality of the subrogation provisions of the Act by voluntarily accepting benefits under the statute. In *Cardunal Savings & Loan Association v. Kramer* (1984), 99 Ill. 2d 334, 341, 459 N.E.2d 929, 934, the supreme court stated that, generally speaking, a litigant who has voluntarily accepted the benefits of a statute may not question the statute's validity. Mr. Page received over $42,000 in benefits under workers' compensation, whereas his recovery against the third-party tortfeasor would have been limited to the $25,000 policy limit. Therefore, Mr. Page has waived any right to challenge the validity of section 5(b) of the Act. (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b).) We hereby affirm the circuit court's decision that the Department's workers' compensation lien attached to the entire amount claimed by Mr. Page.

The third issue involved in this appeal is whether the circuit court erred by allowing plaintiff's attorney statutory attorney fees for money recovered by the Department.

The provision of the Act dealing with attorney fees is contained in section 5(b). This section reads, in pertinent part, as follows:

"Out of any reimbursement received by the employer pursuant to this Section, the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b).

Pursuant to this statutory provision, the only question to be resolved is whether the efforts of plaintiff's attorney resulted in or substantially contributed to the settlement received. Plaintiff's attorney was the only attorney involved in the settlement negotiation with the insurance company, and therefore it is certain that he was the only person who "contributed" to securing the proceeds. The circuit court found that "[t]he fund out of which intervening-plaintiff receives compensation was the result of the efforts of plaintiff's attorney and his work did substantially contribute to the creation of

that fund."

The Department contends that plaintiff's counsel's actions hindered the Department's right of reimbursement. The Department, citing *King v. King* (1977), 52 Ill. App. 3d 749, 367 N.E.2d 1358, states that it is well settled in Illinois that an attorney may not recover compensation from a party he has wronged by representing adverse or conflicting interests in the same litigation.

■ We believe that *King* is distinguishable. *King* involved a divorce case where an attorney represented one spouse after he was initially contacted by the other spouse. The obvious conflict of interest present in *King* is simply not present in this case. The Act, particularly section 5(b) (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b)), specifically provides for the award of attorney fees out of funds received by employers as a result of workers' compensation liens to lawyers who represent employees in suits against third parties. This is precisely the situation which is present here. It is readily apparent that employees' attorneys will often represent interests which are somewhat different than the interests of employers in cases such as this, and we believe that the language of section 5(b) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b)) countenances such a situation. We do not believe that a conflict of interest such as is prohibited by *King* is present here. For the foregoing reasons, we hereby affirm the decision of the circuit court which awarded fees to plaintiff's attorney, and modify said award to take into account the increase in the award to the Department. The award to plaintiff's attorney is hereby increased to $6,000 plus accrued interest, or 25% of $24,000 plus accrued interest.

We hold that the Department's lien attaches to the entire proceeds of the settlement in this case, and that plaintiff's attorney is entitled to 25% of the entire proceeds pursuant to section 5(b) of the Act.

Affirmed in part and reversed in part.

McCULLOUGH, P.J., and GREEN, J., concur.